**E-FILED**
Wednesday, 15 August, 2012  11:39:55 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LESLIE W. LUCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-3342 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff Leslie W. Luckett appeals from the denial of his application for Social Security Disability Insurance Benefits and Supplemental Security Income (collectively "Disability Benefits") under Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c.  This appeal is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c).  Luckett has filed his Motion for Summary Judgment (d/e 14), and Defendant Commissioner of Social Security has filed a Motion for Summary Affirmance (d/e 16).  The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court.  Consent to Proceed Before a United States Magistrate Judge, and Order of Reference entered February 28, 2012 (d/e 13).  For the reasons set forth below, the decision of the Commissioner is affirmed.

## STATEMENT OF FACTS

Plaintiff Luckett was born April 14, 1982.  He completed the eighth grade.  Luckett suffers from type I diabetes, hypothyroidism, depression, and injuries to his dominant right hand.  He worked as a laborer on a paint line.  Answer to Complaint (d/e 10), attached Certified Transcript of Proceedings Before the Social Security Administration (R.), 64-65, 188, 190.  Luckett stopped working in January 1, 2007, when his employer closed and he re-injured his right hand when he hit someone with a closed fist.  R. 74, 190.

On January 2, 2007, Luckett went to the emergency room at Blessing Hospital in Quincy, Illinois (ER).  R. 342-44.  Luckett went there to have his right hand examined.  An x-ray showed that he broke his right fifth metacarpal in his little finger when he hit the person the day before.  He was given a splint and discharged.  Luckett returned to the ER on January 9, 2007, complaining of back and hand pain.  R. 355-57.  The back x-rays were normal.  The hand x-rays showed the prior fracture of the fifth metacarpal.  R. 355.  Luckett was prescribed pain medication and released.  R. 357.

On April 14, 2007, Luckett went to the ER due to a sore on his calf.  R. 344.  On examination, the doctor found multiple sores on Luckett's legs, buttocks, face, and chin.  Blood tests showed very high blood sugar levels

and an elevated white blood cell count.  R. 346-47.  The doctor found
normal range of motion, normal sensation, and normal motor function.
R. 347.  Luckett was given insulin and left against medical advice.  R. 347.

On July 11, 2007, Luckett went to the Northeast Missouri Health
Council medical offices (Clinic).  He saw Elizabeth Schrage, a Registered
Nurse Practitioner.  R. 243, 411.  Luckett told Sage that he was diagnosed
with diabetes when he was eight or nine years' old.  He stated that he did
not follow the proper diet for his condition.  He also told her that he needed
thyroid medicine.  On examination, Schrage found that Luckett had limited
use of his right hand due to an old injury, but had good sensation in the
hand and no neurological deficits.  R. 243, 411.  Schrage ordered blood
tests and prescribed thyroid medicine.  R. 243, 411.

Luckett returned to the Clinic on August 10, 2007, for a scheduled
follow-up visit.  R. 239, 409.  Schrage reviewed the results of the blood
test.  She noted a sore on Luckett's lower left leg and multiple scars on his
legs from previous sores.  R. 239, 409.  Luckett reported that he had
diarrhea when his blood sugar was too high.  Luckett requested a hearing
evaluation.  He also reported that he needed glasses, but could not afford
them.  R. 239, 409.  Schrage prescribed medication and insulin syringes.
Luckett returned on August 13, 2007, for a recheck of the sore on his leg.
R. 327, 408.

On November 30, 3007, Luckett went to the ER due to excessive vomiting.  He reported that he drank whiskey the night before.  R. 299-301, 323.  Luckett reported that he had diabetes, but did not check his blood sugar levels because he could not afford it.  He reported that he smoked two packs of cigarettes a day, "got drunk about once a month," and used marijuana.  R. 299, 323.  He reported that he had surgery on his right forearm after he punched through a window.  He reported that he had numbness in his right hand since that incident.  R. 299, 323.  On examination, the doctor found wounds on his legs, scaly patches of skin, and multiple scars.  R. 299, 323.  Luckett's blood glucose level and his white blood cell count were high, but his potassium and sodium levels were low.  R. 285, 327-28.  Luckett was diagnosed with diabetic ketoacidosis, hypothyroidism, and leukocytosis.  R. 301, 325.[1]  He was given insulin.  He refused to stay because he felt depressed there.  Luckett left against medical advice.  R. 301, 325.

On January 23, 2008, Luckett returned to the Clinic to see Schrage because of sores on his hands, arms, and legs.  R. 234, 404.  He stated that he had picked at the scabs and made them worse.  Schrage prescribed thyroid medicine and antibiotics.  R. 234, 404.  Luckett returned

---

[1]The ER doctor's notes state on R.301 that Luckett had diabetic ketoacidosis due to non compliance versus possible infection, but the doctor's notes also state on R.299 that Luckett had diabetic ketoacidosis due to possible infection versus non compliance.

to the Clinic on March 20, 2008.  He stated that the sores were not healing.

He also stated that he was not good about taking his insulin, did not watch

his diet, and occasionally smoked pot.  R. 248, 402.  Schrage found

multiple wounds on his hands and legs from sores.  She found sensation

present in both feet.  R. 248, 402.  Schrage ordered blood tests and

prescribed medication.  R. 248, 402.

Luckett returned to see Schrage on April 11, 2008.  Luckett still had

sores and also was not sleeping well.  R. 247, 401.  Luckett reported that

he drank alcohol, did not follow his diet, did not test his blood sugar levels,

and did not take his insulin properly.  Sometimes he did not take the

insulin, and sometimes he took too much at one time.  R. 247-401.  Luckett

said he could not afford test strips to test his blood sugar.  R. 247, 401.

Schrage found multiple sores on Luckett's hands and legs and a fungal

infection on his feet.  Schrage prescribed an antifungal medication, an

antidepressant, and blood glucose testing strips.  R. 247, 401.

On April 25, 2008, Luckett returned to the Clinic.  On examination,

Schrage found that Luckett had flaking skin on his legs and hands and

multiple sores on his hands.  R. 245, 398.  Schrage prescribed medication.

R. 245, 398.

On May 3, 2008, Luckett went to the ER.  He reported that he had

been vomiting and had diarrhea for five to seven days.  He also said he

had a rash on his feet.  R. 270.  He reported that his right hand was previously reattached surgically.  R. 270.  He reported that he had eight beers and five to six shots the night before.  R. 270.  His blood glucose level was elevated.  R. 271, 274.  He was diagnosed with vomiting and hyperglycemia.  R. 269.  He was given anti nausea medication.  He felt better and was released.  R. 269, 271.

On July 14, 2008, Luckett saw Schrage at the Clinic.  Luckett had sores on his body and also blisters on his feet.  R. 396.  Luckett also complained of back pain.  Luckett stated that he hurt his back when he was working; he hurt it lifting an automotive transmission.  R. 396.  Schrage found sores and decreased protective sensation in his extremities.  R. 396. Schrage prescribed thyroid medicine and antibiotics.  R. 396.

On July 14, 2008, Schrage completed a form that Luckett had provided to her entitled, "Medical Source Statement of Ability to do Work-Related Activities (Physical)."  R. 250-53, 390-93, 426-29.  Schrage opined that Luckett could occasionally lift 50 pounds and frequently lift 20 pounds. Schrage opined that Luckett had limited ability to reach, handle, finger, and feel with his right hand.  Schrage stated that Luckett had partial numbness in his right hand due to injury.  Schrage opined that Luckett could stand and/or walk less than two hours in an eight-hour workday, and needed to alternate between standing and sitting.  R. 250-51, 390-91, 426-27.

Schrage opined that Luckett was limited in his ability to push or pull with both his upper and lower extremities. She opined that his ability to push or pull with his upper extremities was limited by his decreased grip strength in his right hand. His ability to push and pull with his lower extremities was limited by weakness and loss of feeling in his legs and feet due to his diabetes. R. 251.

Schrage opined that Luckett had unlimited ability to hear and speak, but had blurry vision when his blood sugar was too high. R. 252, 392, 428. Schrage opined that Luckett had limited ability to tolerate noise, humidity, wetness, extreme temperatures, and work hazards such as machinery or heights. R. 253, 393, 429.

Luckett next went to see Schrage on September 29, 2008. Luckett still had sores on his body and blisters on his feet. Luckett reported that he was not compliant with his insulin. Luckett stated that he did not have money to buy test strips. Luckett also complained of back pain. R. 388. Luckett also reported feeling depressed and upset because he had been to St. Louis. His sister had been murdered in St. Louis. Schrage recommended counseling. Schrage noted that Luckett's sores and blisters were somewhat improved. R. 388. Schrage prescribed thyroid medication, antibiotics and an antidepressant. R. 388. Schrage noted that Luckett needed ophthalmology and endocrinology consults. R. 388.

On November 10, 2008, Luckett went to the ER with a laceration of his right thumb.  R. 263-64.  Luckett had decreased sensation and limited range of motion in his right hand due to previous injury.  R. 264.  Luckett was given antibiotics and pain medication, and was released.  R. 265, 268.

On December 23, 2008, Luckett went to see Schrage because of a burnt left wrist.  Luckett reported that he stopped taking the antidepressant because it made him feel "hot-headed."  R. 382.  On examination, Schrage found an inflamed abrasion on Luckett's left forearm.  R. 382.  Schrage prescribed medication and ordered blood tests.  R. 382.

On January 21, 2009, Luckett went to the ER for nausea, vomiting, and diarrhea.  R. 255.  He was diagnosed with gastroenteritis and was released.  R. 255-57.

On March 9, 2009, Luckett saw Schrage again at the Clinic.  Luckett reported that his blood sugar levels were improving.  R. 381.  Luckett complained about a knot behind his nipple.  He also stated that he had diarrhea multiple times a day.  R. 381.  On examination, Schrage found multiple sores on Luckett's hands and feet and a lump behind the right nipple.  R. 381.  Schrage prescribed Bentyl to be taken before each meal.  Schrage also scheduled appointments with a gastroenterologist, an ophthalmologist, and a dermatologist.  R. 381.

On May 7, 2009, Luckett saw Schrage again.  R. 380.  Luckett had glasses at this time.  Luckett reported that he could not keep his blood sugar under control.  He also reported having angry outbursts when his blood sugar went too high.  R. 380.  On examination, Schrage found folliculitis on his arms and legs.  Schrage prescribed antibiotics and another antidepressant.  R. 380.

On May 9, 2009, Luckett saw Dr. Raymond Leung, M.D., for a consultative physical examination.  R. 304-13.  Luckett said that he cut his right forearm in 2000.  He said he had no sensation in the first three fingers on his right hand and decreased sensation in the other two.  R. 304.  On examination, Dr. Leung found no sensation to light touch or pinprick in the first three fingers of his right hand, and limited sensation in the other two.  Sensation in the left hand was normal.  R. 306.  During the examination, Luckett had difficulty gripping and picking up pennies with his right hand.  R. 305.  He had 4+/5 pinch strength in his right hand and 5/5 strength in his left.  He otherwise had a normal reflexes and range of motion.  He had a normal gait and was able to tandem walk, heel/toe walk, squat and hop.  R. 306.

Dr. Leung opined that Luckett could occasionally lift and carry 21 to 50 pounds and frequently lift and carry 20 pounds or less; sit, stand, and walk for eight hours each without interruption.  R. 312-13.  He opined that

Luckett could reach, handle, finger, feel, push and pull with his left hand, and could use his right hand to reach, but only occasionally use his right hand to handle, finger, feel, push and pull. R. 311.  He opined that Luckett could operate foot controls continuously with his right foot and frequently with his left.  Dr. Leung opined that Luckett could never climb, but could continuously balance, stoop, kneel, crouch and crawl.  R. 310.  He opined that Luckett was not subject to any environmental limitations.  R. 309.

On May 13, 2009, Luckett saw a clinical psychologist Dr. Frank Froman, Ed.D. for a consultative psychological examination.  Dr. Froman diagnosed a major depressive disorder of chronic mild severity, with episodes of impulse control disorder and low normal intellectual functioning.  R. 318.  Dr. Froman opined that Luckett could perform simple one and two-step tasks, relate adequately to co-workers and supervisors, and understand oral instructions, but would have difficulty understanding written instructions.  R. 318.  Dr. Froman opined that Luckett had marked limitations in the ability to understand, remember and carry out complex instructions, and an extreme limitation of ability to make complex work-related decisions.  R. 318.  Dr. Froman concluded,

> That said, an employer who may take on the responsibility of having an uncontrolled and brittle diabetic, somebody with aggressive and impulsive acting out behaviors episodically, a very mixed and spotty minimal work record, incomplete education, low intellectual functional abilities, and a right hand

which is impaired, may indeed find it difficult to provide the necessary accommodations to assist him in being able to function in their business.

R. 318.

Luckett saw Schrage again on June 10, 2009.  Luckett reported getting sick every morning and that his morning blood sugar levels were too high.  R. 378.  Schrage prescribed Seroquel for his depression.  R. 378.  Luckett saw Schrage again on June 29, 2009. He said that he stopped taking the Seroquel.  He said that the Seroquel helped with his dry mouth and sleep, but he could not get up in the morning.  R. 376.  He said that his anger problems were better, but he still could not sleep.  R. 376.  Schrage lowered the Seroquel dosage and prescribed other medication.  R. 376.

Luckett saw Schrage several times in July 2009, to try to adjust his medication to try to control his blood sugar and stomach problems. R. 364-69.  On July 23, 2009, Schrage wrote a letter for Luckett addressed to, "Dear Judge."  R. 363.  The letter stated, in part:

> Please understand that Mr. Luckett's condition is very fragile. His blood sugar control is very unpredictable and difficult to treat.  When his blood sugar is high he feels agitated, nauseated, very fatigued and weak.  He must check his blood sugar at least 4 to 6 times daily and administer rapid acting insulin as needed.  Because of these problems he requires frequent medical appointments and close monitoring.  He is unable to maintain part-time and full-time employment at this time.

R. 363.  On the same day, Thursday, July 23, 2009, Schrage issued a

Return to Work Certificate for Luckett.  Schrage stated that Luckett could return to work on Tuesday July 28, 2009.  R. 364.

On September 17, 2009, Schrage placed her initials on each page of her July 14, 2008, form and noted no changes on each page.  R. 426-29.

The Administrative Law Judge (ALJ) held an evidentiary hearing on September 23, 2009.  R. 69-99.  The ALJ conducted the hearing by video conference.  The ALJ was in Chicago, Illinois.  Luckett and his counsel were in Hannibal, Missouri.  Vocational Expert Michelle M. Peters appeared by telephone.

Luckett testified first at the hearing.  He testified that he lived in a house with his mother and her boyfriend.  He testified that he completed the eighth grade and did not secure a GED.  He has not received any other vocational training.  R. 73.  At the time of the hearing, he was taking Levemir, an insulin product; Synthroid, a thyroid medicine; Seroquel; Lexapro; and Sudafed.  R. 80.  He testified that he tested his blood sugar level six to eight times a day.  R. 81.

Luckett testified that he last worked for Kooster Tool and Dye on the paint line.  He lifted objects onto the line.  The objects weigh 20 to 40 pounds.  He worked at Kooster Tool and Dye six to eight months.  Luckett's attorney interrupted to state that the work records indicate that he worked from January 2006 to January 2007 at this job. Luckett testified that the

work strained his hand.  R. 74.  Luckett testified that he had problems when his blood sugar was too high.  He could not concentrate and became tired.  R. 80.  He quit the job because the company closed and he "re-broke" his "bad hand."  R. 74.

Luckett testified that he had a driver's license and could drive.  He said that he had problems driving at night because of his eyesight.  He testified that his eyes were "getting bad in the last few years."  R. 75.  He said that he had difficulty buckling his belt and buttoning shirts because of the injuries to his right hand.  He testified that he did a few dishes, did laundry, and took out the trash.  R. 75.  He said that he used to like woodworking before he hurt his hand.  Luckett testified that he hurt his hand in 2003 or 2004 when he fell through a window. R. 75.  He testified that he could feel a little with his pinky and ring finger, but he had no feeling in the rest of the hand.  The lack of feeling extended along a scar into the wrist area.  R. 84.

Luckett testified that he watched an occasional movie on television, but did not read books, magazines, or newspapers.  He did not go out to the movies, to social gatherings, or to church.  He said that people occasionally came over to his house to visit.  R. 76.  He testified that he did not have any problems getting along with his family and friends.  R. 79.

Luckett testified that he could pick up a case of canned soda with his left hand, but not his right.  He could hold a gallon of milk down by his side with his right hand, but could not lift it straight up.  R. 76.  He said that sitting in a chair at the hearing was uncomfortable.  He felt trapped and sweaty.  He needed to move around.  He said that he had no pain sitting. He testified that his feet were a little numb at the hearing.  Luckett testified that he could not sit through an entire movie.  He had to get up to go to the bathroom frequently.  R. 76-77.

Luckett testified that he took the Seroquel and Lexapro for depression.  He testified that he was depressed about his health.  He also testified that he has difficulty controlling his anger.  R. 93.  Luckett testified that he also got irritated if he had to stand in line too long.  R. 77.

He testified that he did not like to walk too far because of pain in his back and calves and the bottom of his feet.  R. 77.  He testified that his doctor told him that the pain he experienced when walking was the result of his diabetes.  R. 77.  He said that walking up and down stairs caused burning in his calves.  R. 78.

Luckett testified that his back hurt when he bent over.  He said that he could pick up objects more easily with his left hand.  He testified that he could only write for a little while because he would lose feeling in the fingers in his right hand.  Luckett testified that he could not bend his right

wrist because of his injury.  R. 78-79.  Luckett said that the heat bothered him.  He became light headed and would start sweating.  R. 79.

He testified that his diabetes caused blurry vision when his blood sugar level was high.   He experienced blurry vision a couple of times a month.  The blurry vision lasted thirty to forty minutes or longer.  He also got headaches a couple of times a month from his blood sugar levels.  He would lay down for an hour or more when he got one of these headaches.  R. 82-83.  He said the diabetes caused numbness in his hands and feet two to three times a month.  He said that the numbness usually lasted 40 minutes to one hour.  R. 85.

Luckett testified that he had recently been diagnosed with diabetic gastropathy.  He testified that his digestive system takes two days to digest food that a normal person digests in 90 minutes.  This causes him to throw up in the morning and also have diarrhea.  R. 85.  Luckett testified that he threw up regularly in the morning.  R. 80.  Luckett said that he has been put on medication for this condition.  He said that the medication has slowed down the vomiting and diarrhea.  R. 85-86.  He stated that he now experienced vomiting and diarrhea two times a week with the medication.  R. 86.  He said that the vomiting lasted 20 to 30 minutes and the diarrhea lasted 30 minutes to two hours.  He said that his energy was gone thereafter.  R. 87.  He testified that the lack of food in his system after the

vomiting and diarrhea caused his body to "shut down."  R. 86.  Luckett said

that he starts shaking and sweating.  He testified that he sometimes forgets

what he is doing.  R. 86.

Luckett testified that his diabetes also caused sores all over his body.

R. 90.  He testified that he had approximately twenty sores on his legs at

the time of the hearing.  Luckett testified that the sores lasted for a month

or more.  R. 89-90.  He testified that he got blisters on the bottom of his

feet from his diabetes.  R. 90.  He uses antibiotic cream on the sores and

blisters.  R. 90-91.

The vocational expert Peters then testified.  The ALJ asked Peters:

I want you to assume a person of the claimant's age, education
and work experience and skills said (sic).  And if they were
limited to light work that did not require fine precision work with
the right dominant hand, only occasional feeling with that right
dominant hand, no complex written or oral instructions and
communications and no unprotected heights or no climbing of
ladders.  Would that person be able to do any of the claimant's
past work?

R. 94.  Peters opined that such a person could not perform Luckett's past

relevant work.  R. 95.  Peters opined that such a person could perform

janitorial jobs and packaging and inspection jobs.  Peters opined that

14,000 janitorial jobs, 5,000 packaging and 4,000 inspection jobs existed in

Missouri.  R. 95.  The ALJ asked about the impact of adding a sit/stand

option to the limitations in the hypothetical question.  Peters responded,

"The janitorial position would be limited Your Honor, with a sit/stand option. Again, packaging, any inspection type of work would be reduced down by approximately 50 percent."  R. 95.

Luckett's attorney then questioned Peters.  Luckett's attorney asked Peters to assume a person with Luckett's age, education and experience limited to sedentary work with limited use of his upper extremities.  Peters opined that such a person would be limited by his education to manufacturing and would not be able to work in that area because of the limitations in the use of his upper extremities. R. 98.  Peters also opined that a person would be unemployable if he needed unscheduled breaks of at least 30 minutes in duration.  R. 98.  The hearing then concluded.

<u>THE DECISION OF THE ALJ</u>

The ALJ issued her decision on May 21, 2010.  R. 56-65.  The  ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.  Step 1 requires that the claimant not be currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If  true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant's

condition must meet the criteria in a Listing or be equal to the criteria in a Listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the claimant not to be able to return to his prior work considering his Residual Functional Capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant has the burden of presenting evidence and proving the issues on the first four steps.  The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.  Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ found that Luckett met his burden at Steps 1 and 2 of the Analysis.  He was not engaged in substantial gainful activity, and he suffered from diabetes mellitus, right finger fracture and history of laceration of right upper extremity, major depressive disorder, and learning disability.  R. 58.  The ALJ determined at Step 3 that none of Luckett's

impairments or combination of impairments met or equaled any Listing.

R. 58.

At Step 4, the ALJ determined that Luckett had the RFC, "to perform

light work . . . except the claimant cannot perform fine precision work with

his right upper extremity, cannot be required to follow complex written or

oral instructions or communication, and cannot work around unprotected

heights."  R. 61 (internal citation omitted).  The ALJ relied on Schrage's

July 14, 2008, opinions about Luckett's ability to lift and carry, Dr. Leung's

opinions about Luckett's functional capacity, and Dr. Froman's opinions

about his psychological condition.  R. 62-64.  The ALJ specifically

explained that she limited the claimant to work that did not involve following

complex written or oral instructions to accommodate Dr. Froman's opinions

about Luckett's mental limitations.  R. 64.

The ALJ gave less weight to Schrage's opinions and observations

because she was a nurse and not a doctor.  R. 62.  The ALJ also stated

that Schrage's opinions were sometimes inconsistent,

> Beth Schrage's opinions are not given great weight as she is
> sometimes inconsistent.  On July 23, 2009, she stated that his
> diabetes is unstable and he is unable to maintain part or full
> time work, but then that same day completes a return to work
> certificate stating that he can return to work on July 28, 2009
> and does not mark any limitations.

R. 64.  The ALJ discounted Schrage's notes indicating that Luckett had

vision problems because there were no optical testing records in the file. The ALJ noted that Dr. Leung found his vision was 20/30 in the right eye and 20/25 in the left.  R. 62, 305.  The ALJ gave no weight to Schrage's notes and Luckett's claims about his vision.  R. 63.

The ALJ found that Luckett's claims about the severity of his symptoms were not credible.  R. 61.  The ALJ noted that Luckett reported to the ER staff that his arm was cut off and reattached, but the medical records did not reflect this event.  The ALJ noted that Luckett was able to use his right fist to hit someone.  Luckett was also able to lift an automotive transmission, indicating he could use his hands to grasp objects.  R. 61-62. The ALJ noted that the record of the November 2007 visit to the ER showed full strength in the right hand with some numbness.  The ALJ relied on Dr. Froman's evaluation to discount Luckett's claims about the severity of his symptoms of depression.  R. 63-64.

After determining Luckett's RFC, the ALJ determined that Luckett could not perform his past work on the paint line.  The ALJ relied on Peters' testimony for this finding.  R. 64.  At Step 5, the ALJ determined that Luckett could perform a significant number of jobs in the national economy. The ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and Peter's opinions about the janitorial, packaging and inspection jobs to reach this conclusion.

Luckett then appealed to the Commissioner's Appeals Council.
See R. 9.

## EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

On July 14, 2010, Luckett submitted additional evidence to the
Appeals Council.  R. 25.  Much of the evidence consisted of duplicate
records from Schrage.  R. 30-48, 432-53.  In addition, Luckett submitted a
report of a psychiatric evaluation performed by Dr. Alicia Gonzalez, M.D.,
on April 28, 2010.  R. 28-29, 430-31.  Luckett told Dr. Gonzalez that he was
depressed because his sister was murdered four years earlier.  He also
reported that his diabetes was sometimes out of control.  He reported being
depressed and having difficulty sleeping.  Dr. Gonzalez diagnosed Luckett
with major depressive disorder, recurrent, moderate.  She gave Luckett a
Global Assessment of Functioning rating of 45.  She recommended two
medications for Luckett, Welbrutin and Trazodone.  R. 431.

Luckett also submitted to the Appeals Council ophthalmology
examination reports from Dr. Dean P. Hainsworth, M.D., for examinations
conducted on April 30, 2009, and October 29, 2009.  Dr. Hainsworth
diagnosed Luckett with proliferative diabetic retinopathy.  R. 49-52, 454-57.
Dr. Hainsworth advised Luckett that he needed to control his blood sugar
levels and he may need laser treatments in the future.  R. 454.

On July 12, 2011, the Appeals Council denied Luckett's request for review.  R. 1.  Luckett then brought this action for judicial review.

## ANALYSIS

This Court reviews the Decision of the Commissioner to determine whether it is supported by substantial evidence.  In making this review, the Court considers the evidence that was before the ALJ.  Wolfe v. Shalala, 997 F.2d 321, 322 n.3 (7th Cir. 1993).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court must accept the findings if they are supported by substantial evidence, and may not substitute its judgment.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  This Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record.  Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008).  The ALJ must articulate at least minimally her analysis of all relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).  The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence.  Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's decision is supported by substantial evidence.  The RFC finding is supported by Dr. Leung's opinions, Dr. Froman's opinions, and

Schrage's opinions regarding Luckett's ability to lift and carry.  The ALJ discounted Schrage's other opinions and gave specific support for those conclusions.  The ALJ noted inconsistencies in Schrage's statements and the lack of diagnostic testing.  The ALJ noted that Schrage's statements about Luckett's vision were inconsistent with Dr. Leung's testing.

The ALJ's findings at Step 5 that Luckett could perform a significant number of jobs in the national economy are supported by Peters' opinions. Peters opined that a person with Luckett's age, education, experience, and RFC could perform 14,000 janitorial jobs, 5,000 packaging jobs, and 4,000 inspection jobs that existed in Missouri.  Even if the sit/stand option was added to the RFC, Peters still opined that the packaging and inspections jobs would only be reduced by 50 percent.  This opinion supports a finding that Luckett could have performed 4,500 jobs that existed in Missouri.  This number of jobs constitutes a significant number of jobs in the national economy for purposes of the Analysis.  See Liskowitz v. Astrue, 559 F.3d 736, 743 (7th Cir. 2009) (1,000 is considered a significant number of jobs). The ALJ's decision is supported by substantial evidence.

Luckett argues that the ALJ should have given Schrage's opinions controlling weight as a treating acceptable medical source.  An opinion from an acceptable medical source who treated the claimant is entitled to controlling weight when the opinion is well supported by medically

acceptable clinical and diagnostic techniques and is reasonably

consistent with the other substantial evidence in the record.  20 C.F.R.

§ 404.1527(c)(2);  SSR 96-2p.   Schrage is not an acceptable medical

source.  An acceptable medical source is a licensed physician, a licensed

or certified psychologist, a licensed optometrist, a licensed podiatrist, or a

qualified speech pathologist.  20 C.F.R. § 404.1513(a).  A nurse

practitioner is not an acceptable medical source, but rather, is another

source that the ALJ may consider.  20 C.F.R. § 404.1513(d).  The ALJ

therefore was not required to give Schrage's opinions controlling weight.[2]

Luckett argues that the ALJ should have given greater weight to

Schrage's opinions even if they were not entitled to controlling weight.  The

Court will not question the ALJ's consideration of Schrage's opinions.  The

ALJ should have, and did, consider Schrage's opinions as a source of

proper evidence regarding Luckett's medical condition.  R. 62-63.  The ALJ

relied on Schrage's opinions regarding Luckett's exertional capacity, such

as his ability to lift and carry.  R. 62.  The ALJ gave less weight or no

weight to some of Schrage's other opinions and explained the bases for

---

[2]Luckett complains that the Social Security regulations conflict with Missouri law
regulating medical professionals, particularly nurse practitioners.  This may or may not
be; however, the law of the United States is the supreme law of the land.  U.S. Const.
art. VI cl. 2.  The ALJ, thus, properly followed the federal Social Security regulations
rather than state law.

those decisions.  As explained above, the medical evidence provides substantial evidence for those decisions.

Luckett also argues that the ALJ erred in her treatment of Dr. Froman's opinion.  The Court disagrees.  The ALJ explained how he incorporated Dr. Froman's opinions into his RFC assessment.  Luckett complains that the ALJ did not adequately address Dr. Froman's opinion that Luckett would have difficulty with written instructions because the ALJ only excluded complex written instructions from the formulation of the RFC. The ALJ finding is not clearly erroneous on this point.  Dr. Froman said that Luckett would have difficulty with written instructions; Dr. Froman did not opine that Luckett could not follow written instructions.  Dr. Froman's opinion, thus, could support the conclusion that Luckett could follow some written instructions.  The ALJ's RFC limitation to exclude complex written instructions is supported by Dr. Froman's opinion.

Luckett complains that the ALJ did not address Dr. Froman's comment, quoted above, about the difficulties that Luckett would pose to an employer.  The Court agrees that the ALJ probably should have addressed this comment in Dr. Froman's report.  The Court finds that the error in the omission was harmless.  The ALJ's decision is consistent with

Dr. Froman's diagnosis and assessment of Luckett's mental limitations.[3]
The Court will not reverse on these grounds.

Luckett next argues that the ALJ erred in her determination that
Luckett was noncompliant with his medication.  Luckett relies on a Social
Security policy statement regarding circumstances in which a person with a
disabling impairment would not be disabled if he followed prescribed
treatment.  SSR 82-59.  This policy statement does not apply here.  The
ALJ found that Luckett did not have a disabling condition regardless of his
compliance or noncompliance with his medication.  The ALJ found that
Luckett suffered from severe impairments at Step 2, but was not disabled
at Step 5.  The ALJ noted that Luckett's medical evidence stated that he
was not compliant with his diabetes medicine at various times, but the ALJ
found that Luckett's condition was not disabling even with his
noncompliance.  The policy statement, therefore, is not relevant.

Luckett next argues that the ALJ's credibility determinations were
not supported by substantial evidence.  This Court will not review the
credibility determinations of the ALJ unless the determinations lack any
explanation or support in the record.  Elder v. Astrue, 529 F.3d 408, 413-14

_____

[3]Dr. Froman's quoted comment also discussed Luckett's education and lack of
work experience.  R. 318.  Those factors are not included in formulating a person's
RFC.  See 20 C.F.R. § 404.1545.  Luckett's education and lack of work experience
were considered independently by Peters in formulating her opinions and by the ALJ in
applying the Medical-Vocational Guidelines.  See R. 65, 94.

(7th Cir. 2008).  The ALJ explained her credibility findings and cited

evidence in the record to support those findings.  The ALJ noted that

Luckett told the ER staff that his arm was cut off and reattached, but the

medical records do not reflect this event.  The ALJ noted that Luckett was

able to use his right fist to hit someone and was able to lift an automotive

transmission.  R. 61-62.  The ALJ noted that the record of the November

2007 visit to the ER showed full strength in the right hand with some

numbness.  R. 62.  The Court will not disturb such properly supported

credibility findings.  Elder, 529 F.3d at 413-14.

        In the alternative, Luckett asks for a remand to consider

Dr. Gonzalez's April 28, 2010, psychiatric evaluation that Luckett submitted

to the Appeals Council.  This Court may remand a case under sentence six

of § 405(g) if the claimant presents new and material evidence and

demonstrates good cause for failing to incorporate the evidence into the

record before the ALJ.  42 U.S.C. § 405(g); Sample v. Shalala, 999 F.2d

1138, 1144 (7th Cir. 1993).  New evidence is evidence that was "not in

existence or available to the claimant at the time of the administrative

proceeding."  Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990).  The

Commissioner correctly notes that the April 28, 2010, evaluation was

available to Luckett during the administrative proceeding because the ALJ

had not yet made her decision at that time.  The ALJ did not issue her

decision until three weeks later on May 21, 2010.  The ophthalmology reports submitted to the Appeals Council were from 2009, and so, also were not new evidence.  See R. 454-56.  Because Luckett did not submit new evidence, a remand under sentence six is not appropriate.

WHEREFORE, Plaintiff Leslie W. Luckett's Motion for Summary Judgment (d/e 14), is DENIED, and Defendant Commissioner of Social Security's Motion for Summary Affirmance (d/e 16) is ALLOWED.  The decision of the Commissioner is AFFIRMED.  THIS CASE IS CLOSED.


ENTER: August 15, 2012


_____*s/ Byron G. Cudmore*_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE